IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>   Plaintiff,<br> vs.<br>Carolyn Hart McCord,<br>   Defendant. | CR 16-00984-TUC-RM(EJM)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant McCord's Motion to Sever Defendants. [Doc. 49]. The basis for the severance is co-defendant Melton's willingness to provide exculpatory testimony for McCord at a severed trial. This motion is a very close call. In baseball, a tie goes to the base runner. In criminal cases, at least in this Court's view, a tie goes to the defendant. While a jury may ultimately find the proposed testimony incredible, it is favorable and has exculpatory value for McCord, it is not cumulative of other evidence, and the government's proffered evidence of McCord's guilt is not overwhelming. Moreover, this case is neither long nor complex so considerations of judicial economy do not weigh against a severance. For these reasons, it is recommended that the Motion to Sever Defendants be granted and separate trials be scheduled before the District Court.

**FACTUAL BACKGROUND**

The defendants are charged in a three-count Indictment dated May 18, 2016, with Conspiracy to Transport Illegal Aliens for Profit and two counts of Transportation of an Illegal Alien for Profit. [Doc. 20.] All three counts stem from the defendants traveling from Tucson, Arizona to Rio Rico, Arizona on April 22, 2016, to pick up and transport two undocumented immigrants in exchange for payment. [Doc. 1, Complaint.] The

undocumented individuals were discovered in the backseat of a vehicle that defendant Melton was driving at the Border Patrol Checkpoint on Interstate 19 in Southern Arizona. McCord owned that vehicle and she was in the front passenger seat when the undocumented immigrants were discovered at the checkpoint.

Material witness depositions of the two undocumented individuals referenced above occurred on May 23, 2016 and June 16, 2016. The material witnesses testified that they crossed the border into the United States with a cell phone provided to them by the smuggler in Mexico, and got directions of where to go and who would pick them up via calls on the cell phones. (VD Tr. 5/23/16 at 8, 52-53.)[1] After they crossed the border, a vehicle arrived and took them to a junkyard where they remained for almost a week. (VD Tr. 5/23/16 at 9, 24, 53.) Another vehicle then took them to a house where they stayed for about three days. (VD Tr. 5/23/16 at 10-11, 35, 54-55.) Melton and McCord arrived to pick them up at the house between 9 p.m. and 10 p.m. on a Friday. (VD Tr. 5/23/16 at 12-13, 56-57.) Melton was driving the vehicle. (VD Tr. 5/23/16 at 13.) This was the first time the witnesses saw the defendants, neither of whom spoke Spanish. (VD Tr. 5/23/16 at 79.) The witnesses testified that both defendants spoke with a lady at the house, but neither heard or recalled much about the conversation and neither witness speak English fluently. (VD Tr. 5/23/16 at 14-15, 38, 43-44, 58.) After the defendants moved some tools from the backseat of the vehicle, the witnesses got into the vehicle and McCord helped one witness with his seat buckle. (VD Tr. 5/23/16 at 17, 37, 39, 45, 57.)

Orlando Pablo-Carrillo testified that the woman (McCord) told him in English not to worry, they had already crossed other people who did not speak English. (VD Tr. 5/23/16 at 59-61, 65.)[2] On cross-examination defense counsel confronted Mr. Pablo-Carrillo with the recorded statement that he gave to Border Patrol agents where he said the exact opposite --

---

[1] Citations to "VD Tr." followed by a page number are to transcripts of the video depositions of the material witnesses.

[2] Miguel Alegria-Castellanos testified that the defendants appeared nervous because they hugged and smoked a cigarette while driving. (VD Tr. 5/23/16 at 19-20, 27.)

1    that the man (Melton) said he had crossed people before. (VD Tr. 5/23/16 at 72-73.) He
2    testified he was afraid and nervous while talking with the Border Patrol agents so that is why
3    he was confused about who made that statement. (VD Tr. 5/23/16 at 72-73, 80.) Both
4    defendants told Mr. Pablo-Carrillo to tell immigration officials that he was a resident. (VD
5    Tr. 5/23/16 at 62-64.) He also testified about a phone call that Melton received while
6    driving. Melton spoke in English with a person who had called and then handed his phone
7    to McCord, who immediately gave it to Mr. Pablo-Carrillo. (VD Tr. 5/23/16 at 62.) The
8    person on the phone also told him, in Spanish, to say he was a resident if asked by
9    immigration officials. (VD Tr. 5/23/16 at 63.)

10        Trial is currently scheduled for October 25, 2016. The issue at trial, at least for
11    McCord, is whether (or when) she knew that the two individuals were undocumented and/or
12    whether she was merely present in the vehicle when co-defendant Melton was smuggling
13    these individuals.

14        In the Motion to Sever, counsel for McCord avows that at a severed trial, co-defendant
15    Melton is willing to waive his Fifth Amendment privilege and voluntarily testify as to the
16    following facts that exculpate McCord: (1) that it was solely Melton's idea to drive the
17    vehicle from Tucson to Rio Rico on the evening of April 22, 2016; (2) that earlier that
18    evening, Melton told McCord he had received a phone call from a friend asking him to pick-
19    up a relative of that friend from the Rio Rico area; (3) that McCord had no knowledge that
20    Melton was driving to Rio Rico to pick-up and then transport two illegal immigrants and
21    drive them to Tucson; (4) that McCord had no knowledge that Melton would receive money
22    for picking up the illegal immigrants; (5) that Melton did not plan to share or give McCord
23    any of the money he would receive for picking up and transporting the illegal immigrants;
24    (6) that Melton, not McCord, told the illegal immigrants that he had transported illegal
25    immigrants before; and (7) that Melton, not McCord, had previously transported illegal
26    immigrants from Rio Rico to Tucson. (Doc. 49 at 9-10.)[3] Additionally, Melton is willing

27
28        [3] At oral argument on September 12, 2016, the Court asked McCord's counsel if his
   avowal to the court was a legally sufficient proffer of testimony, or whether an affidavit from

- 3 -

1 to testify to these facts regardless of whether his trial occurs before or after McCord's trial.
2 At oral argument on the Motion to Sever, the Court confirmed with Melton's counsel that his
3 client was both willing to voluntarily testify at a severed trial and that counsel for McCord
4 had accurately set forth the proposed testimony.  Given the willingness of Melton to
5 voluntarily testify as to this exculpatory information at a severed trial, the defense argues that
6 the interests of justice require severance of the defendants.

7 The government opposes a severance arguing that the dominant interest of judicial
8 economy (*i.e.,* having one trial) is not outweighed by manifest prejudice because the
9 proffered testimony is not substantially exculpatory as it does not directly refute all of the
10 evidence against McCord.  The government also argues that little weight and credibility
11 should be accorded to Melton's proffered testimony given that he and McCord were in a
12 romantic relationship and living together at the time of this offense.

## **DISCUSSION**

14 "[C]o-defendants jointly charged are, prima facie, to be jointly tried." *United States*
15 *v. Gay*, 567 F.2d 916, 919 (9th Cir. 1978).  "This is also true in conspiracy cases." *United*
16 *States v. Hernandez*, 952 F.2d 1110, 1114 (9th Cir. 1991) (internal quotations and citations
17 omitted).  "However, Fed. R. Crim. Pro. 14 'provides that, at the discretion of the trial judge,
18 a severance may be ordered when it appears that a defendant may be significantly prejudiced

---

Melton detailing his willingness to voluntarily testify at a severed trial and his proposed testimony was required. McCord's counsel stated that he believed an affidavit from the co-defendant was not required, but that he could provide one to the Court. The Court entered an Order on September 13, 2016, which provided that if counsel could obtain such an affidavit from Melton, it should be submitted to the Court by September 20, 2016. On September 19, 2016, counsel for McCord filed a Notice of Intent not to file an affidavit from Melton. Counsel did not cite any authority to support his position that his avowal as to Melton's testimony was a legally sufficient proffer for a severance motion. The Court was initially surprised that counsel for McCord was not submitting an affidavit from Melton detailing the proposed testimony that he will voluntarily provide at a severed trial, only because counsel seemed confident that he could obtain the affidavit. However, counsel for McCord can neither compel Melton to submit an affidavit for purposes of this motion nor force Melton to testify at a joint trial.

by a joint trial with co-defendants.'" *Hernandez*, 952 F.2d at 1114. While Rule 14 giveth (in theory), courts taketh away (in practice). "The 'great mass' of cases refuse to grant a severance despite the anticipated exculpatory testimony of a co-defendant." *Gay*, 567 F.2d at 919 ("'Motions for severance so that a defendant may be able to call a co-defendant to the stand are usually denied.'") (*quoting* 1 C. White, Federal Practice and Procedure: Criminal § 225). As discussed below, that is because of the virtually unfettered discretion afforded to a district court in deciding whether a severance is required.

1. The Legal Standard for Granting a Severance

The Ninth Circuit has held that "'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. . . . [T]he determination [is left] to the sound discretion of the district courts.'" *United States v. Reese*, 2 F.3d 870, 891 (9th Cir. 1993) (*quoting Zafiro v. United States*, 113 S.Ct. 933, 938-39 (1993); *see also Gay*, 567 F.2d at 919 ("The ordering of separate trials requires unusual circumstances and the power to do so rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar."). Because of this discretion, the bases for an appellate court's reversal of a district court's denial of severance motions have been described as "abuse," "clear prejudice," "clear and affirmative showing of abuse," "clear showing of prejudice," and "positive showing of prejudice." *Gay*, 567 F.2d at 919.

When the reason for severance is the need for a co-defendant's testimony, the defense must show that: (1) the co-defendant would be called as a witness at a severed trial; (2) the co-defendant would in fact testify; and (3) the testimony would be favorable or exculpatory to the moving party.[4] *United States v. Pitner*, 307 F.3d 1178, 1181 (9th Cir. 2002); *United States v. Mariscal*, 939 F.2d 884, 886 (9th Cir. 1991); *United States v. Seifert*, 648 F.2d 557, 563 (9th Cir. 1980); *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977); *Reese*, 2 F.3d

---

[4] In addition, the movant has to show that the co-defendant's testimony would not be cumulative; but that is not at issue here.

at 892; *Hernandez*, 952 F.2d at 1115; *Gay*, 567 F.2d at 919. In deciding whether to grant a motion for severance, the district court must consider the weight and credibility of the proposed testimony and the economy of severance. *Hernandez*, 952 F.2d at 1115; *Seifert*, 648 F.2d at 564.

Here, there seems to be no dispute that co-defendant Melton would be called as a witness at a severed trial and that he would in fact testify. Counsel for McCord has represented that he would call Melton at a severed trial and Counsel for Melton has represented that his client would voluntarily testify to the facts set forth in the Motion to Sever regardless of the order of the trials. The issue in dispute is whether that proffered testimony would be favorable or exculpatory for McCord.[5]

---

[5] The government has not challenged the form in which Melton's testimony has been proffered (*i.e,*, an avowal by counsel), but rather the substance of that testimony *(i.e.* whether it is exculpatory). However, as mentioned earlier, at oral argument the Court raised the issue of the proper form of the co-defendant's proffered testimony. This Court has not found a case where the Ninth Circuit upheld a district court's denial of a severance motion solely because the proposed voluntary testimony of a co-defendant was not set forth in an affidavit sworn to by the co-defendant. Nor has that court held that an avowal of counsel as to the co-defendant's testimony is legally insufficient to support a severance motion. In *United States v. Kaplan*, 554 F.2d 958, 966 (9th Cir. 1977), that court held that "[a]lthough an affidavit by [the co-defendant] would have strengthened the credibility of this proposed testimony, we are not prepared to require such an affidavit under the circumstances of this case." Moreover, the Ninth Circuit has reversed a district court's denial of a severance motion both when the co-defendant submitted an affidavit detailing the proposed testimony, *Seifert*, 648 F.2d at 563, and when counsel merely avowed as to the proposed co-defendant's testimony. *Vigil*, 561 F.2d at 1317; *see also United States v. Cobb*, 185 F.3d 1193, 1196-1198 (11th Cir. 1999) (Eleventh Circuit reversed the district court's denial of the severance motion where counsel for the co-defendant proffered his client's exculpatory testimony). Likewise, the Ninth Circuit has routinely affirmed the denial of a severance motion when the co-defendant provided an affidavit detailing the proposed testimony, *Hernandez*, 952 F.2d at 1115-1116, as well as when the co-defendant did not submit an affidavit stating that he was willing to testify and providing the substance of that testimony. *Mariscal*, 939 F.2d at 887. Thus, although an affidavit from the co-defendant could strengthen the credibility of the proposed testimony, the failure to submit such an affidavit is not fatal to a severance motion. Rather, the focus is on the substance of the proposed voluntary testimony and not the form in which that testimony is proffered. Accordingly, this Court finds that the avowals of counsel for both McCord and Melton are sufficient for both determining whether Melton will voluntarily testify and whether his proposed testimony is exculpatory.

Before turning to Melton's proffered testimony, the Court will first address the applicable legal standard that must be applied to the "value" of the co-defendant's proffered testimony at a severed trial. In their respective pleadings, both the government and the defense cite *United States v. Pitner* for the proposition that the district court must determine if the co-defendant's proposed testimony is "substantially exculpatory" to warrant a severance. However, as discussed below, the Court believes this is the legal standard for when the Court of Appeals is reviewing whether a District Court abused its discretion in denying a severance motion which was based on a co-defendant's testimony at a severed trial. By contrast, when a district court is first determining whether a severance is warranted, the court must determine if the proffered testimony is "favorable" or "exculpatory" for the movant.

In 1977, the Ninth Circuit in *Vigil* held that "[w]hen the reason for severance is the asserted need for a codefendant's testimony, the defendant must show that he would call the codefendant at a severed trial, that the codefendant would in fact testify, and that the testimony would be favorable to the moving defendant." 561 F.2d at 1317. Several years later in *Seifert*, the Ninth Circuit again used this same language that the proposed co-defendant testimony be "favorable" to the moving defendant. 648 F.2d at 563. In 1991, in *Hernandez* the Ninth Circuit reiterated that the co-defendant's testimony must be "favorable" to the defendant seeking the severance. 952 F.3d at 1115.[6]

*Vigil*, *Seifert* and *Hernandez* have never been overruled or questioned by Ninth Circuit or Supreme Court precedent. However, in *Mariscal*, also decided in 1991, the Ninth Circuit first used the "substantially exculpatory" language; however, that was in the context of the standard of review on appeal. That court, quoting *Vigil*, first noted that the proffered testimony must be "favorable" to the party moving for the severance. *Mariscal*, 939 F.2d at 887. However, the court then stated "[g]iven the extremely narrow scope of our review, we hold that a moving defendant must show more than that the offered testimony would benefit

---

[6] In *Gay*, the Ninth Circuit used the term "exculpatory," rather than "favorable," when describing the proposed co-defendant's testimony. 567 F.2d at 919-920.

1 him; he must show that the codefendant's testimony is 'substantially exculpatory' in order
2 to succeed." *Id.*

3 Similarly, in *Reese*, the Ninth Circuit first noted that when the reason for severance
4 is the need for a co-defendant's testimony, the movant must show "that the testimony would
5 be favorable to the moving party." 2 F.3d at 892 (*quoting Hernandez*, 952 F2d at 1115.)
6 But, again, the court then turned to the standard of review on appeal and held that "even
7 when this threshold is crossed [*i.e.* "favorable" testimony], a defendant will not necessarily
8 be entitled to a reversal of his conviction." *Id.* The court, relying on *Mariscal*, pointed out
9 that because of the narrow scope of appellate review, the moving defendant must show that
10 the proposed testimony was "substantially exculpatory." *Id.*

11 In *Pitner*, a case cited by both parties here, the Ninth Circuit did not explicitly
12 mention, unlike in *Mariscal* and *Reese*, the trial court's duty to determine if the proffered
13 testimony would be favorable to the movant. That failure may have caused the confusion in
14 the case at hand. However, the *Pitner* court did make clear that "[t]o succeed in his appeal
15 on the severance issue," the defendant had to show that the co-defendant's testimony would
16 be "substantially exculpatory." 307 F.3d at 1181.

17 This Court believes that the Ninth Circuit case law is clear that in deciding whether
18 a severance is warranted based on the proposed testimony of a co-defendant, the district court
19 must determine if that testimony would be "favorable"or "exculpatory" for the movant. That
20 standard changes – to whether the proposed testimony was "substantially exculpatory" –
21 when the Court of Appeals is deciding whether the district court abused its discretion in
22 denying a severance. That heightened showing required of a defendant on appeal makes
23 sense because an appellate court, unlike a trial court, is looking at a fully developed trial
24 record and can assess whether the proposed testimony would have been "substantially
25 exculpatory" notwithstanding the inculpatory evidence introduced at trial.[7] By contrast, it

---

27 [7] The standard of review for the denial of a severance motion, abuse of discretion, is
28 essentially a harmless error type review based on the other evidence of a defendant's guilt admitted at trial.

- 8 -

would be difficult for a trial court to determine in a vacuum if the proffered testimony of a co-defendant is "substantially exculpatory," given that the trial court does not yet know what evidence will be admitted at trial, let alone the credibility or strength of that evidence.[8]

The case at hand is unusual in that some of the trial testimony may already exist if the material witnesses, who have been deported and beyond the reach of a trial subpoena, do not voluntarily return to the United States for trial and the video depositions are admitted into evidence under Fed. R. Evid. 804(b)(1). However, for the reasons discussed below, the Court finds that notwithstanding the testimony of the material witnesses, Melton's proffered testimony is favorable and exculpatory for McCord.

2. Melton's Proffered Testimony.

The gist of Melton's proposed testimony is, essentially, that this was his rodeo - he alone made the plans to pick these individuals up in Rio Rico and McCord was just along for the ride (albeit in her car). Given the circumstances surrounding the commission of these alleged offenses, one would expect that Melton's proffered exculpatory testimony for McCord – that she was merely along for the ride – would amount to a full admission of his guilt. But that is far from the case; rather, Melton's proposed testimony is "carefully-described" so that he commits to very little, in terms of his culpability, prior to taking the witness stand. *See Pitner*, 307 F.3d at 1181.[9]

---

[8] At oral argument, McCord's counsel agreed with the Court's analysis described above (which makes sense since it benefits his client) but stated that he viewed this as more of an "intellectual issue" because he has shown that Melton's proposed testimony is "substantially exculpatory." The Court is not convinced that is true because, as discussed below, Melton's proposed testimony (which is unsupported by an affidavit) is carefully crafted, somewhat vague, and certainly does not fully exculpate McCord given the other inculpatory evidence against McCord proffered by the government.

[9] Trial courts view motions to sever defendants based on a co-defendant's proposed testimony with some suspicion because of the potential for defendants to "play games." *Gay*, 567 F.3d at 920. For instance, a demand by the putative co-defendant witness that his trial be scheduled first. *Id*. at 920 n. 6. That is not the case here because Melton's offer to testify at a severed trial is not conditioned on his trial occurring first. However, there is some concern that the defendants may be "playing games" in terms of Melton's proposed "carefully-described" testimony. That concern is amplified by Melton's apparent

For instance, Melton's proposed testimony is vague as to if and when he realized that the individuals he was to pick up were undocumented. Specifically, the proffered testimony is that it was solely Melton's idea to do a favor for a friend by picking up that friend's relative in Rio Rico. This testimony certainly suggests that Melton did not know the friend's relative was undocumented when he left Tucson. Melton does plan to testify that: McCord had no knowledge that Melton was driving to Rio Rico to pick-up and then transport two illegal immigrants and drive them to Tucson; that McCord had no knowledge that he would receive money for picking up the illegal immigrants; and that he did not plan to share or give McCord any of the money he would receive for picking up and transporting the illegal immigrants. But, again, this proffered testimony is arguably vague as to what Melton knew, when he knew it, and what he was being paid for doing, given that his testimony is phrased in terms of what McCord knew, or did not know, about picking up undocumented individuals in return for payment. Likewise, his proffered testimony that he had smuggled aliens from Rio Rico before and that he, not McCord, told the material witnesses that he had previously smuggled undocumented individuals, is not an admission that he knew these material witnesses were undocumented. Again, it appears that Melton's carefully-described testimony may be leaving the door open for him to claim, at his trial and/or McCord's trial, that he also did not know (perhaps initially or maybe ever) that these individuals were undocumented.[10]

---

unwillingness to provide an affidavit detailing his proposed testimony. If the defendants are playing some sort of a game by having Melton testify at a severed trial, it is a dangerous one given that his testimony at McCord's trial could form the basis for a later perjury prosecution and/or for a sentencing enhancement if Melton is convicted of the charged offenses. For that reason, the Court is less concerned if the defendants are rolling the dice in a very risky game of chance.

[10] Such a claim seems absurd if Melton indeed testifies that he told the material witnesses, who did not speak English and were being picked up near the border, that he previously smuggled undocumented individuals. There is simply no reason to tell the material witnesses about his prior smuggling activity if he did not know or have reason to know of their legal status. But it is not outside of the realm of possibility that Melton will take this position at trial, given that he has not pleaded guilty to the offenses so he can both reap the benefits of acceptance of responsibility under the U.S. Sentencing Guidelines and still provide exculpatory testimony at McCord's trial. Perhaps this Court is scrutinizing

- 10 -

1    Nevertheless, and luckily for McCord, the Ninth Circuit case law only requires the co-
2 defendant's testimony to be favorable or exculpatory for the party moving for a severance,
3 and not inculpatory of the testifying co-defendant. That said, the credibility of the co-
4 defendant witness is bolstered, and therefore strengthens the argument in favor of a
5 severance, when the co-defendant's proposed testimony contravenes his own penal interests.
6 *See United States v. Johnson*, 713 F.2d 633, 641-642 (11th Cir. 1983) (the alleged exculpatory
7 testimony lacked a certain amount of credibility because it did not contravene the co-
8 defendant's own penal interests.). Here, the Court finds that even though Melton's proposed
9 testimony is vague, carefully crafted, and does not amount to a full admission of his guilt, the
10 specific proposed testimony that he had previously smuggled undocumented immigrants
11 from Rio Rico and told the material witnesses that as well, is inculpatory and against his
12 penal interest (indeed, it would virtually ensure his conviction at his later trial) given the
13 circumstances of how this offense was allegedly committed. The more important question
14 for purposes of this severance motion is whether this proposed testimony is exculpatory for
15 McCord.

   3. The Exculpatory Value of the Proposed Testimony.

17    The government argues that a severance is not warranted precisely because Melton's
18 proposed testimony regarding his admission to the material witnesses about his prior alien
19 smuggling activity does not exculpate McCord, but rather, inculpates her as well given that
20 it appears she was present in the vehicle when Melton made the statement. The government
21 maintains that this statement put McCord on notice, if she already did not know, that the
22 individuals who were getting in or already in her vehicle were illegal immigrants. Therefore,
23 the government argues that Melton's testimony is not exculpatory for severance purposes
24 because it establishes McCord's mens rea for the offense - knowledge of the lack of legal
25 status of the material witnesses.

---

Melton's proposed testimony more than it should; but, given the odd way in which his testimony is summarized and because the Court does not have the benefit of an affidavit from Melton, the Court feels compelled to scrutinize.

- 11 -

The government is correct that Melton's proffered testimony about telling the material witnesses that he had previously smuggled illegal immigrants, if made in McCord's presence, is evidence of her knowledge (or reckless disregard) of the legal status of these material witnesses. However, that testimony does not: (1) definitively establish when McCord knew (or should have known) that the material witnesses were undocumented; (2) foreclose a mere presence defense; and/or (3) foreclose a defense that she never joined in this conspiracy (or did not join it for profit). The timing of Melton's alleged statement to the material witnesses about his prior smuggling – *i.e.*, whether it was made before or after the defendants and the material witnesses were headed to Tucson – as well as whether McCord was present when that statement was made, will certainly impact the success of those defenses. But Melton's testimony that he never shared any information about (prior or the instant) alien smuggling with McCord until he shared it with the material witnesses is still exculpatory evidence for McCord.

Assuming *arguendo* that McCord first learned of (or should have known) what Melton was up to when he made that statement to the material witnesses, McCord certainly had options - never get back in her car, ask to be let out of her car, and/or call law enforcement. The fact that she exercised none of those options is evidence of her involvement in this smuggling venture with her boyfriend which the government will certainly point out to the jury. But Melton's testimony that McCord knew nothing about why they were going to Rio Rico (other than perhaps to pick-up a relative of Melton's friend), was not going to be paid for accompanying him, and only later learned about the legal status of the material witnesses still has exculpatory value for McCord. The defense can argue that the fact that she made poor decisions by either getting or remaining in the vehicle once she learned (or had reason to know) of the legal status of the material witnesses, and by failing to call law enforcement to report her boyfriend, does not mean she is guilty of alien smuggling for profit. McCord can certainly present a mere presence defense without Melton's testimony, but his testimony that she never agreed to take part in a conspiracy to smuggle aliens for profit is potentially strong exculpatory evidence.

### 4. The Credibility and Weight of the Proffered Testimony

The government argues that perhaps the most important consideration in determining whether a severance is warranted is the weight and credibility of Melton's proffered testimony. The government claims that Melton is not credible because his testimony is both biased and motivated by his desire to help his romantic partner. Counsel for McCord argues that the credibility of a witness is for a jury to decide, not the Court. Moreover, counsel points out that McCord has never been arrested, let alone convicted of an offense, and Melton has prior felony convictions, is street savvy, and is 20 years older than McCord. For those reasons, the defense claims that it is not incredible that McCord, who was unsophisticated and naive about criminal activity generally, simply trusted and went along with her boyfriend out of love and/or stupidity (which often times go hand in hand).

Contrary to the defense's contention, this Court has to consider the credibility and weight of the proffered testimony in determining whether a severance is warranted. Clearly, as the government argues, Melton is a biased witness and the government will easily expose that bias at a severed trial. But potentially biased testimony alone does not warrant denial of a severance motion. *See Cobb*, 185 F.3d at 1197-1200 (Eleventh Circuit reversed the district court's denial of defendant's severance motion where the co-defendant, who was the defendant's brother, would have provided exculpatory testimony at a severed trial). To be sure, a jury may be hard pressed to believe that McCord would loan her vehicle to her boyfriend and travel with him for an hour to the border late in the evening without asking any questions. However, it cannot be said that Melton's proposed testimony lacks "a certain amount of credibility" because, as discussed above, it does "contravene[] his own penal interest." *Johnson*, 713 F.2d at 641-642.

Given the potential exculpatory value of the proposed testimony in this case where, as discussed below, the evidence of McCord's guilt is not overwhelming, this Court simply cannot conclude that a jury would accept the government's theory and completely discount the defense's innocent explanations (which would be explained by Melton) for how McCord got involved in the incident that led to her arrest. To be clear, the Court is not making a

finding that Melton's proposed testimony is credible; that is for the jury to decide. Rather, the Court finds that Melton's proposed testimony is not so incredible that a jury would give no (or very little) weight to the exculpatory value of that testimony.

### 5. Considerations of Judicial Economy

As the Ninth Circuit has made very clear, judicial economy is an important factor in the severance analysis. The government points out that it will be calling the same witnesses and presenting the same evidence at trial for both defendants and, for that reason, argues that judicial economy weighs in favor of one trial. However, judicial economy will always weigh against a severance because one trial is always more economical than two. As such, that factor cannot become a talisman in the severance analysis. Judicial economy becomes relevant where the exculpatory value of the proffered testimony is marginal or cumulative of other evidence; where the government's proffered evidence of guilt is overwhelming; where the proffered co-defendant's testimony is so incredible that a jury would give it no or little weight; and/or where the trials are expected to be long and/or complex.

Here, as discussed earlier, the proffered testimony is favorable and potentially exculpatory, it is not cumulative of other evidence, and it is not completely incredible. The government's proffered evidence of McCord's guilt is not overwhelming given that: McCord was a passenger in the vehicle; other than her romantic relationship with Melton, there is apparently no evidence that she either planned the crime or was being paid for her involvement in this offense; and she did not confess to the crime. If a jury credits Melton's testimony, the case against McCord will likely turn on whether a jury believes the testimony of the material witness at the video deposition or the statement that this witness gave to Border Patrol Agents about which defendant said they had smuggled aliens before. Finally, this is not a long or complex case, as a trial will last only two or three days (at most). Moreover, if the material witnesses refuse to voluntarily appear for trial and the district court rules that their deposition testimony is admissible under Fed. R. Evid. 804(b)(1), then a large portion of the trial may have already been completed. Accordingly, judicial economy does not weigh against severance.

**CONCLUSION**

As the Court mentioned at the outset, this Motion to Sever Defendants is a very close call. Frankly, many severance motions based on a co-defendant's offer to present exculpatory testimony at a severed trial are likely close calls because the district court is presented with the prospect of precluding a jury from hearing potentially exculpatory evidence. It is also a judgment call that is rarely overturned on appeal because the severance decision is left to the "sound discretion of the district court" and will not be disturbed on appeal unless that discretion is abused. The judgment call here is that a severance is warranted. This Court finds that Melton's proposed testimony, while it may ultimately be viewed as incredible, has exculpatory value (*i.e.,* it is favorable) for McCord in this case which is not long or complex, and where the evidence of McCord's guilt does not appear to be overwhelming. Accordingly, it is recommended to the District Court that the Motion to Sever Defendants be granted.

Pursuant to 28 U.S.C. §636(b)(1)(B), the parties have fourteen (14) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. Any objections and Responses to objections filed should be filed as CR 16-00984-TUC-RM. No Replies shall be filed unless leave is granted from the District Court.

DATED this 23rd day of September, 2016.

_____
Eric J. Markovich
United States Magistrate Judge